IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM McCURDY,                :
                                :
    Plaintiff,                  :
                                :
vs.                             :
                                :       CIVIL ACTION 16-0034-M
CAROLYN W. COLVIN,              :
Social Security Commissioner,   :
                                :
    Defendant.                  :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for disability insurance benefits (Docs. 1, 13). The parties filed written consent and this action was referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 21). Oral argument was waived in this action (Doc. 20). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, McCurdy was fifty-two years old, had completed a high school education[1] (Tr. 66), and had previous work experience as an industrial painter and sandblaster (Tr. 67). Plaintiff alleges disability due to chronic obstructive pulmonary disease (hereinafter *COPD*), bronchitis, sleep apnea, chronic hypoxemia, emphysema, obesity, fatigue, loss of hearing, osteoarthritis in both knees, neck pain, blurred vision, granulomatous disease, muscle cramps, asthma, headaches, hypertension, back and hip pain, and decreased concentration (Doc. 12).

McCurdy applied for disability benefits on October 24, 2012, asserting an onset date of June 1, 2011 (Tr. 49, 163-66). An Administrative Law Judge (ALJ) denied benefits, determining that although Plaintiff could not return to his past relevant work, there were specific light work jobs that he could perform (Tr. 49-57). McCurdy requested review of the hearing decision

---

[1]**Error! Main Document Only.**Plaintiff testified that he had received a Graduate Equivalency Degree (Tr. 66).

(Tr. 42-45), but the Appeals Council denied it (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, McCurdy alleges that: (1) The ALJ's residual functional capacity (hereinafter *RFC*) assessment is not supported by the evidence; and (2) the ALJ did not properly consider the combination of all of his impairments (Doc. 13). Defendant has responded to—and denies—these claims (Doc. 16). The Court's summary of the relevant record evidence follows.

On February 14, 2011, McCurdy was admitted to Jackson Medical Center for two nights after experiencing bronchitis symptoms; a chest x-ray showed pneumonia in the right lung and prior granulomatous disease (Tr. 228-32). After being given flue and pneumonia vaccines, he was discharged home, stable, with an antibiotic prescription.

On November 3, Dr. Steven Furr, Family Physician, examined Plaintiff for congestion and a cough; he reported smoking one-and-one-half packs of cigarettes daily and weighing 326 pounds (Tr. 273-75). McCurdy had a normal gait and exam. The Doctor diagnosed hypertension, obesity, unspecified sleep apnea, and COPD and encouraged him to quit smoking and lose weight.

A chest x-ray on November 11, 2011, noted old granulomatous changes on the right (Tr. 262).

On November 11, 2011, Dr. Clifton Knizley, Pulmonologist,

examined McCurdy for complaints of shortness of breath, provoked by physical exertion; he reported his exercise capacity was very poor and that he was a two-pack-daily smoker for thirty-seven years (Tr. 245-50, 282). Plaintiff reported that his inhaler did not help him and he spoke of sleep apnea symptoms. On exam, McCurdy had normal range of motion (hereinafter *ROM*) with no tenderness. Knizley noted severe morbid obesity, but diagnosed shortness of breath, unspecified sleep apnea, tobacco abuse, and hypoxemia. The Pulmonologist instructed Plaintiff to use his breathing medication twice daily instead of on an as-needed basis; he strongly advised him to stop smoking and lose weight.

On December 8, Dr. Cynthia Crowder, Pulmonologist, examined McCurdy for sleep apnea; he reported that he did not feel refreshed after a night's sleep and was tired and moderately sleepy during the day (Tr. 258-61, 283). Plaintiff said he drank four-to-twelve cups of coffee and three-to-five sodas daily; he complained of back pain. A sleep study showed severe obstructive sleep apnea for which a CPAP was prescribed; McCurdy was told to stop smoking and lose weight (Tr. 259, 263-64). On February 10, 2012, McCurdy reported that he was using his CPAP regularly and was sleeping and feeling better with the exception of during hunting season; Dr. Crowder noted he seemed calmer and told him to stop smoking and lose weight (Tr. 255-57).

On March 19, 2012, McCurdy saw Dr. Knizley for shortness of

breath, but reported feeling better though he had had difficulty walking up a hill or going up two flights of stairs (Tr. 241-44). The Pulmonologist added COPD to his diagnosis and strongly advised Plaintiff to lose weight and quit smoking. On July 20, the Doctor noted that McCurdy continued his pack-and-a-half-a-day habit; Plaintiff reported becoming dyspneic after cutting grass, but he could walk a long distance (Tr. 234-36). Knizley noted no respiratory distress with no wheeze, rhonchi, rales, or tenderness; weight loss and smoking cessation were urged.

On July 29, Plaintiff reported feeling better with CPAP use; he denied myalgias and back pain (Tr. 252-53). Crowder's exam revealed nothing out of the ordinary.

On August 2, Dr. Furr noted McCurdy's claim of worsening right upper back pain for three days; he was smoking a pack-and-a-half-a-day and had gained eleven pounds since the prior visit (Tr. 270-72). Back tenderness was noted and costochondritis was diagnosed. On October 8, Plaintiff complained of sinus and chest congestion, a cough, fever, and drainage for four days duration (Tr. 266-69). McCurdy had full ROM in his neck with no evidence of atrophy or deformity in the musculoskeletal exam.

On November 30, Dr. Knizley's exam was consistent with prior exams with no noted irregularities (Tr. 278-81). On December 17, McCurdy reported that his respiratory status was normal, though he had some morning shortness of breath; he was

5

told to lose weight and stop smoking (Tr. 305-08). The Pulmonologist noted no respiratory distress, with no wheeze, rhonchi, rales, or tenderness. On April 9, 2013, Plaintiff reported his one-and-one-half-pack daily habit; he indicated that he gets short of breath after walking twenty-to-thirty yards (Tr. 309-12). Knizley noted nothing unusual in his examination notes.

On June 17, Dr. Tim Mullinix, Family Practitioner, examined Plaintiff for a fall earlier that day, causing lower back and right hip pain; a lumbosacral spine x-ray revealed no acute abnormality but some mild spondylolisthesis at L5-S1 (Tr. 285-89). The Doctor noted back tenderness and a guarded gait as well as standing and walking pain; Zanaflax[2] and Toradol[3] were prescribed.

On August 1, McCurdy reported a stable respiratory status and that he was using his inhaler a lot to perform strenuous lawn work; he had a sore tailbone because of a fall earlier in the week (Tr. 313-16). Knizley noted normal ROM throughout, no tenderness, and normal muscle tone; Naproxen[4] and Lortab[5] were

---

[2]**Error! Main Document Only.***Zanaflax* "is a short-acting drug for the acute and intermittent management of increased muscle tone associated with spasticity." *Physician's Desk Reference* 3204 (52nd ed. 1998).

[3]*Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

[4]**Error! Main Document Only.***Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain.

prescribed.  On October 22, 2013, Dr. Knizley reported that
Plaintiff was still smoking a-pack-a-day and was eating poorly
as demonstrated by his recent meal comprised of fried and high
salt foods; McCurdy reported dyspnea with mild-to-moderate
physical activity (Tr. 317-20).  The Doctor noted normal ROM and
no tenderness; he wrote the following in his notes:

> [If t]his patient ever wants to feel
> better he must start doing some things to
> help himself.  He eats very poorly and he
> continues to smoke in excess of one pack per
> day.  He is extremely obese weighing almost
> 350 pounds.  He desperately needs to lose
> weight and to quit smoking.

(Tr. 319-20).  On December 23, Plaintiff told Knizley that his
respiratory status was fairly stable, though he experienced
dyspnea after moderate-to-high levels of physical activity (Tr.
321-24).  Blood pressure was 218/98; medications were prescribed
and Plaintiff was encouraged to see his primary care physician
for treatment.  He was advised to lose weight and stop smoking.

On January 7, 2014, Dr. Furr examined Plaintiff for left
knee, left shoulder, and back pain after falling; the Doctor
noted that McCurdy weighed 346 pounds and was smoking one-and-
one-half packs per day (Tr. 298-303).  Blood pressure was
150/80; no discussion was noted of Plaintiff's hypertension.

---

*Physician's Desk Reference* 2458 (52nd ed. 1998).
  [5]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

Furr noted a normal gait and some tenderness in the injured knee; Celebrex[6] was prescribed.

This concludes the Court's summary of the evidence.

In bringing this action, McCurdy first claims that the ALJ's RFC assessment is not supported by the evidence. He more specifically asserts a lack of evidence because there is no medical source statement from any doctor and his own complaints of pain and limitation, due to heat, pulmonary irritants, and sleepiness, refute the ALJ's conclusion (Doc. 13, pp. 2-4).

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *3. The ALJ is responsible for determining a claimant's RFC, 20 C.F.R. § 404.1546 (2016), but that decision can not be based on "sit and squirm" jurisprudence. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). The Court also notes that the Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 404.1545(a)(3).

The ALJ found that Plaintiff had the RFC to

>   perform a reduced range of light work as

---

[6]**Error! Main Document Only.***Celebrex* is a NSAID used to relieve the signs and symptoms of osteoarthritis, rheumatoid arthritis in adults, and for the management of acute pain in adults. *Physician's Desk Reference* 2585-89 (58th ed. 2004).

>            defined in 20 C.F.R. § 404.1567(b).[7]
>            Specifically, the claimant could
>            occasionally lift/carry up to 20 pounds and
>            frequently lift/carry 10 pounds. He could
>            stand/walk for six hours and sit for six
>            hours per workday with customary breaks. He
>            would need to alternate between sitting and
>            standing at a work station on an occasional
>            basis. The claimant should not push or pull
>            heavy arm or leg controls. He should never
>            climb, crouch, kneel, or crawl. The
>            claimant should avoid exposure to
>            concentrated wetness, humidity, dust, gases,
>            and chemical fumes. The claimant should not
>            drive automotive equipment or operate
>            dangerous moving machiner [sic] such as
>            jackhammers or forklifts. He cannot work
>            around unprotected heights. Due to pain,
>            fatigue and other symptoms, he would be
>            expected to experience deficiencies in
>            concentration, persistence and pace that
>            could cause him to be off-task or
>            unproductive approximately 5 percent of the
>            day.

(Tr. 52).

The ALJ reviewed the medical evidence (Tr. 53-55) before discounting McCurdy's credibility, finding that the extent of his limitations and pain were not supported by the record evidence (Tr. 55). The ALJ noted Plaintiff's shortness of breath typically occurred with strenuous physical activity,

---

[7]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

walking on inclines, or when exposed to heat. The ALJ noted
McCurdy's reports that he could do yard work and household
chores and that he enjoyed fishing; he could walk a long
distance. The ALJ further noted that pain complaints were not
persistent and that the objective medical evidence showed only
mild, degenerative changes. The ALJ pointed out that in spite
of regular medical advice to stop smoking, Plaintiff had not.

The Court finds substantial evidence to support the ALJ's
finding regarding McCurdy's credibility. In addition to the
ALJ's findings, the Court notes Plaintiff's failure to eat
properly and lose weight and his admission that he was able to
go hunting though it interfered with his sleep (Tr. 255, 317).
The evidence plainly shows, as noted by Dr. Knizley, that
McCurdy did not do things to help himself (Tr. 319).

McCurdy also asserted that there was no medical source
statement in the record from which the ALJ could properly assess
his RFC. The Court acknowledges the lack of record medical
evidence, but finds that there was enough for a determination to
have been made here. Plaintiff had several treating doctors who
consistently reported an essentially symptom-free patient who,
for whatever reason, did not comply with medical advice; no
doctor noted limitations, placed limitations on him, or found
that McCurdy was disabled. In any event, Plaintiff has not
directed this Court to specific, objective medical evidence that

contradicts the determination made. The Court finds substantial evidence to support the ALJ's decision regarding McCurdy's RFC.

Plaintiff next claims that the ALJ did not properly consider the combination of all of his impairments. He asserts, specifically, that the ALJ ignored his hearing loss, muscle cramps, and obesity and how they might affect his ability to work (Doc. 13, pp. 4-5). A component of this claim asserts that the ALJ did not ask the Vocational Expert (hereinafter *VE*) a proper hypothetical question that included all his impairments.

"The Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(C). The Eleventh Circuit Court of Appeals noted this instruction and further found "[i]t is the duty of the [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

In the ALJ's findings, she lists McCurdy's impairments and concludes by saying that he "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1" (Tr. 24). This language was upheld as sufficient consideration of the effects of the combinations of a claimant's impairments. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4").

Nevertheless, the Court will review the specific claim brought, noting that McCurdy asserted a hearing loss only once (*see* Tr. 207). This was in a form completed for the Social Security Administration (hereinafter *SSA*) on which Plaintiff indicated that background noise interfered with hearing. There is no record this complaint was ever made to a medical source.

Plaintiff also cites four instances of muscle cramps that the ALJ did not properly consider (Doc. 12 Fact Sheet). The Court has reviewed those medical records (*see* Tr. 234, 242, 278, and 310) and notes that the diagnosis first appeared in Dr. Knizley's record of March 19, 2012 under the caption "Past Medical History Diagnosis" (Tr. 242); that is the label under which it appears in Knizley's successive records (Tr. 234, 278, 310). The Court notes that the designation appeared although Plaintiff had no complaints of muscle cramps during any of the examinations rendered; furthermore, *muscle cramps* was never part of the current assessment for any evaluation.

12

The Court notes that McCurdy's claim criticizes the ALJ for not finding his hearing loss and muscle cramps to be severe. The Court finds no merit in this assertion as there has been no showing that either impairment—of which there is no objective medical evidence—would interfere with McCurdy's ability to work. *See Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) ("An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience"); 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities"); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("The 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"); and Social Security Ruling 96-3p ("evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities").

McCurdy has also asserted that the ALJ did not properly consider the effect of obesity on his ability to work (Doc. 13,

pp. 5-6). Plaintiff references Social Security Ruling 02-1p, entitled *Evaluation of Obesity*, which examines the analysis for determining the following: whether a person is obese (based on a formula known as the Body Mass Index); whether the obesity is a medically determinable impairment; and whether the obesity is severe. The latter determination is made by determining whether "it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p.

The ALJ found that Plaintiff's obesity was a severe impairment (Tr. 51). The ALJ went on to find the following:

> Although the claimant is morbidly obese, the records do not suggest that the claimant has significant difficulty with standing or walking due to his body habitus. In fact, the claimant told his treating provider in July 2012 that he was able to walk long distances (Exhibit 3F). The claimant does not require the use of any assistive device to ambulate. Although the record contains transient reports of back pain, there are no persistent complaints to his treating providers. The claimant often had normal gait and full range of motion of his lumbar spine and extremities on examination. Additionally, objective findings showed only mild degenerative changes in any joint. There is no indication that any of the claimant's treating providers suggested any surgical intervention for his back pains.

(Tr. 55). This explanation defies Plaintiff's assertion that the ALJ did not properly consider the effects of his obesity. More importantly, McCurdy points to no medical evidence that his

14

obesity impacted his ability to work.

Finally, McCurdy has asserted that the hypothetical question to the VE did not properly consider the combination of his impairments. The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a VE to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).

The Court has reviewed the ALJ's questioning of the VE and finds the questions there consistent with the ALJ's RFC assessment (Tr. 88-95; *see generally* Tr. 83-101). Again, though, the Court notes that McCurdy has not demonstrated deficiency in his consideration—or ultimate determination—of Plaintiff's RFC. This claim is without merit.

McCurdy has raised two different claims in bringing this action. Both are without merit because the record medical evidence does not support the limitations Plaintiff claims.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be

entered by separate Order.

DONE this 7th day of September, 2016.

                                            s/BERT W. MILLING, JR.
                                            UNITED STATES MAGISTRATE JUDGE